The first case today is number 23-1328, United States v. Corey Donovan. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Before you begin, Judge Thompson, I just want to make sure you're able to hear everything. Yes, I'm fine, thank you. Okay. Good morning, your honors. Michael Eaton for the appellant, Corey Donovan. Could you just move your mic up a little higher so we can hear you better? Yes. Thank you. I'd like to reserve two minutes of my time for rebuttal, if I may. You may. Thank you. May it please the court, your honors, I'd like to address three issues today, time permitting. First, I'd like to address the Fifth Amendment issue with respect to the defendant's girlfriend. The court, having found that the defendant's girlfriend did not make a statement against interest in conceding ownership of the shotgun, the court erred by accepting her blanket invocation as to any subject matter involved in the case. Second, I'd like to address the sentencing issue. And specifically, even if we consider the only oil filter that the government tested to be a firearm silencer, the second oil filter was not capable of being a firearm silencer, nor is there any evidence of the intent of the defendant to function as such. And finally, if I have time. I'm sorry, counsel. Could you, on the first issue, could you just explain why when the court asked the defense attorney about the Fifth Amendment issue and he said to the court, that's fine, and this counsel represented, your honor, the defense is satisfied, why that is not, if not a forfeiture, an absolute waiver. It seems to me that that's a known relinquishment or voluntary relinquishment of a known right. So I'm not even sure that we review it when the Fifth Amendment claim has been abandoned like that. Well, thank you for the question, your honor. I think that statement needs to be read in the context in which it was made. And first, before the colloquy began, before that statement was made, the court set the parameters for what the colloquy would be. And the court said, if the witness tells me that she is going to invoke, I will respect that and excuse her. And so I think that comment is fairly a reference to the parameters that the court set. I would also note that the defense went through the trouble, of course, of subpoenaing the witness, bringing the witness to court, putting the witness before the judge. So I don't think it's fairly viewed as conceding the issue. Even if we reviewed it under plain error, though, what the judge had before him wasn't simply the witness saying that she was going to invoke. He also knew that there was evidence that had been adduced at trial, right, that the shotgun was stolen and the shotgun was in the Jeep. So that elements that would have established her culpability were already before him. How is that not enough here for us to find that he did a proper analysis there? Well, so I think a couple things on that point. So the testimony that was expected to come in through that witness was simply that she owned and possessed the shotgun. There was no evidence, and this has been clear throughout this litigation, no evidence that she knew the shotgun was stolen or was involved in the theft. And so I think, you know, what's informative, I think, on this issue is what the court did, and I mentioned this in the opening, in analyzing the statement against interest issue. So she had made a comment to police. Why would there have to be evidence that she knew that? Well, because that would be the incriminating nature. No, no, I understand why there would have to be that evidence to prove that she was guilty. Why would there have to be evidence at the moment when she takes the fifth for her to have a valid reason to take it, given the fact that it was stolen? If there was no evidence it was stolen, I could see the idea that, well, it's a little bit hypothetical that maybe it's stolen. But we know that all that's missing is a link as to her knowledge. And so there's a concern she might reasonably have, if you can show my knowledge and I say something, I'm in trouble. So why wouldn't that be enough? Well, I think it's not enough because possession alone is not incriminating without that link to the knowledge. And the court analyzed this issue, as I mentioned, under the statement against interest. And it reasoned, and I'll quote it, a reasonable person in her position would not have understood her statement to be inculpatory unless somebody presents me with some evidence that in addition to claiming ownership, she had a basis to believe that she was involved in the theft in some way that would make her culpable. And so I think without this inquiry, as the government notes, the court would have had to rely on its knowledge and understanding of the case. And its knowledge and understanding of the case. I guess I'm just trying to get from, is the statement alone all that we would look at for purposes of determining whether she had a basis for taking the theft? Not necessarily. So that's, I guess, why I don't. So, OK, the statement itself doesn't do it. But in these circumstances, one could certainly imagine that she had some risk, which would make her wary of speaking, which is all that you would need, right? I think, well, it has to be a reasonable risk, right? It can't be speculative. And where there is no evidence that she knew it was stolen or was involved in the theft, it still remains in the speculative realm. And I would just analogize to the crime of perjury, for instance. Is there evidence that he knew it was stolen? No. No, and the government has conceded that as well. But the analogy, I think, would be to the crime of perjury. So it, of course, would establish an element of the crime of perjury simply by testifying, even though there may not be evidence to support a perjury conviction. But that would certainly give rise to a potential perjury conviction if the other elements were found to have been met. And, of course, we can imagine situations where witnesses offer testimony that differs from that of other witnesses, which would get us even closer to perjury. So I don't think that can... But why wouldn't her testimony give rise to potential culpability? I mean, she gets on the stand, and they start asking her questions about how she came into possession of the gun. Doesn't she open herself up to the circumstances surrounding how she did, in fact, come into possession, which might raise issues of suspicion that she should have known the gun was stolen, depending on what she says? Well, and I think that's the issue here, Your Honor, is that there was no inquiry whatsoever here to determine whether or not that sort of incriminating evidence was even within the realm of possibility. And this Court has made clear that a district court is required to undergo a particularized inquiry. And it's made that clear, especially when... But what is it looking for in that inquiry, I guess, is what we're asking. Yeah, so it's looking for, I think, as the Court summarized in the statement against interest... But it can't be that all you're looking for is whether that particular statement is incriminating. The question is whether, if she gets on the stand, she would have a reasonable basis for invoking the Fifth that she invoked. Are you saying she wouldn't have? I'm saying, based on the record, she wouldn't have. And I think the Court had already decided that by saying without any evidence, any circumstances that would even suggest she knew the gun was stolen, that there is no basis to invoke just on the basis of mere possession. And there is a case, a Sixth Circuit case, U.S. v. Erdo, which gets at this issue. It also involves stolen property. The site is 380 F2D 103. It involved a Fifth Amendment invocation by the defendant. The defendant had given some testimony in a motion to suppress hearing and had admitted to possession of property that was later determined to be stolen. And the Court said there was no Fifth Amendment issue when the defendant had only admitted to possession of the property but not to any knowledge that it was stolen. And I think that's the link, and I think that's the inquiry the Court should have... What were the circumstances of the property there, do you recall? I believe it was also a stolen firearm. I'm not entirely sure on that. But, yeah, he had come into possession of property that was later determined to be stolen. I noticed that you weren't going to address your second issue. Are you conceding on that? The jury instructions? No, no, I'm not conceding that issue. Okay, quick question then. When we look at limiting instructions, you often think about whether it was a strategic choice by defense counsel not to ask for them. Why wasn't it a strategic choice here? So two points on that, Your Honor. The first is that defense counsel actually did request these instructions. And that's what makes this case different than the two... But before the trial started, right? Before the evidence came into trial. Correct, correct. But nothing had changed. In fact, the basis for requesting those instructions only became more stronger. And I would point to the government's cross-examination... But didn't the Court say, ask again when the time arises? The Court said that with respect to the gun cleaning kit only. With respect to the two other pieces of 44B evidence, the compound bows and the scope, the Court simply said if the defense requests it, I will give it. And in fact, the Court also asked the defendant to present limiting instructions in advance to prepare them for the Court. And that's what the defendant did. And if I may just finish one point. And I think it's particularly important in light of the government's cross-examination of the defendant in which it specifically cross-examined him on the fact that he was prohibited from possessing the compound bows and what they characterize as a table's worth of blades, and that he defied a court order in doing so. So the basis which was asking for those limiting instructions, which was just on the possibility that the jury might draw an inference, became very explicit at the end of the trial. Thank you. Thank you, counsel. At this time, if counsel for the government would please introduce himself on the record to begin. Good morning. Charles Rombo for the United States. May it please the Court, the government respectfully requests that this Court affirm the judgment of the District of New Hampshire because there was no plain error in either of the two trial issues and no clear error in the silencer issue that came up at sentencing. Maybe you could just address that last point that defense counsel made about why maybe it wasn't a strategic choice because of the cross-examination of the defendant. Because from your brief, I understand you have some arguments, but you didn't address that. Thank you, Your Honor. Yes, so I think part of this is about the travel of the trial and that this evidence was introduced on the first day during the government's case in chief, and now there's being a suggestion that when the defendant testified two days later that there needed to be some additional limiting regarding the evidence that had already been admitted before the government rested. So I'm not sure that we can rewind the clock and sort of renew that request. But I do think the hearing that Judge Barbadaro held the day before the trial began could not have been clearer in addressing these 404B issues in which the Court repeatedly said, I'm reserving judgment on this. I'm letting the evidence in. You need to make that request at the time the evidence comes in. I'll point to Joint Appendix 105. If the defendant does not ask for a limiting instruction, I won't give one because that's a tactical choice. And I think on the record before the Court, all we can assume at this point is it was a tactical choice. Your opponent said that's true as to a piece of the instructions but not the other two. I think in the context of that hearing, Your Honor, the Court was addressing all the 404B evidence at the same time, and I think the message was clear, at least in our reading of the record, that any 404B limiting instructions would need to be requested at the time the evidence came in. And I think the larger context of this is important, too, that the Court gave the government specific instructions to sanitize certain evidence that it was letting in. And so the evidence didn't necessarily come in in the way that Defense Trial Counsel might have anticipated when filing the motion before trial began. And so the government did give additional context, did, I think, an opening statement refer to certain of the evidence as not a criminal act, and it went to the permitted 404B purposes, which were ownership of the firearm, for example, the gun cleaning kit or the scope and things like that. So I think on the record before the Court, we really can only assume that this was a strategic choice when there was such clear instructions by the district court that if you want a limiting instruction, you need to request it at the time the evidence comes in, and that wasn't done here. See, I thought your argument was it was a strategic choice because the evidence that came in established that you could possess the gun cleaning kit and the gun scope, and so it would not be smart of the defense counsel to ask for these instructions, which basically say you can't consider the gun scope as evidence of possession. And now the defense today has said, well, the government isn't really right about that because during the defendant's cross-examination, the government sort of established that he shouldn't have or couldn't have possessed those. So I'm just wondering if you could address that. And maybe I'm misunderstanding your argument from your brief. No, you aren't. I think this was certainly an unusual trial insofar as the defendant testified, I think, over the wishes of his trial counsel and introduced, for example, there had been an image of all these knives that had been seized from his property that Judge Barbadaro had ruled could not come in in the government's case in chief that the defendant then volunteered during his own testimony. So I think this got into the larger question, and the defendant raised on his own, in his own testimony, that he was permitted to have these other weapons, and then it became part of a larger issue of that, I think rightly so, that he was an individual who did not believe rules applied to him, that did not believe he had to abide by conditions that his probation officer or that the court had imposed and that he was subject to with his probation officer. So I think that's the context in which that came in on cross-examination after the defendant had testified. But to tie it back to the original question of the instructions, I mean, I think the evidence came in, and these were also very unique in some ways, the gun scope that had been returned to the defendant following another police interaction that literally still had the markings on it from when it had been taken into evidence that were uniquely identifying of the defendant's possessory interest in the shotgun and the ammunition with which he was charged. So I think that was certainly our intent in introducing it, and I think that's the way it came in in the government's case in chief. As to that last point, sort of strategic choice aside, I take it the government's position is still, we're still on plenary either way because there just was no request? Absolutely. Yes, Your Honor. And then the idea is just it's just not clear or obvious that it wasn't related enough to the legitimate reasons to introduce it. I think that's right, Your Honor, yes. And just to, I know I'm running on time here, but just to tie it, I do want to speak on the other two issues raised by the defendant in the brief. I think to tie it back to your original question, Judge Thompson, on the invocation by the girlfriend, I think the defendant wants to have this issue presented in a way that, oh, the girlfriend could get up there and testify and say, this is my gun. But she would be subject to cross-examination, and I think the admission itself is sufficient for this court's analysis under Ramos, that it just requires an injurious disclosure, and certainly admitting possessory interest in a stolen firearm is at least a potentially injurious disclosure. Do you have anything to say about the Sixth Circuit case that counsel for the defendant has put forward? I don't, Your Honor. I do think. Is that because you, what do you mean you don't have anything to say about it? He's saying it's directly contrary to your position. Well, I don't think that that's been, I'll just say, Your Honor, that the, our view is certainly that the disclosure here, had it been made, is sufficient under this circuit's precedent with Castro that it would be a wrong on the prosecution ladder, and our view is that's sufficient, and it's not a high bar. Well, take his example of perjury. Right. Obviously, if I speak at trial, that's an element of perjury. Absolutely. Does that mean I can always take the Fifth? I don't think so, Your Honor. Right, because there's got to be some reasonable basis to think that the testimony would be perjurious, right? And I think that sort of situation may require a greater inquiry from a district court judge. Here, the proffered testimony from Ms. Finnegan, the girlfriend, was that she would be talking about her ownership and use of the firearm and ammunition, and that would be knowing the fact that the firearm was stolen, and that obviously did not go before the jury but was known to the district court in conducting this inquiry, that an admission that she possessed the firearm or even the ammunition in this context would be subject to cross-examination. The firearm had been purchased. Yeah, I understand. I guess the thrust of the question is what is our case law saying as you read it? What's your best case for the idea that in the absence of anything in the record to show her knowledge, that it's reasonable to think she would have known? Because without that knowledge, she doesn't have any reason to fear prosecution. So without some reason to think that by speaking and saying, yes, it was mine, given the fact that it's stolen, that posed some risk to her, why would we think she has some reason to be able to invoke the Fifth? Well, I think the way this issue has at least come out in my practice, Your Honor, has been that we don't necessarily get to know the answer when there's an invocation. The answer is going to be yes or no if she knows. I think the question is, if I'm following, I mean, you tell me what the government's position is. One could be whenever you admit to an element, that's enough. Well, obviously the perjury example suggests that's probably not quite right. Then it could be, well, if I admit to an element and we absolutely know that would be incriminating, well, that seems pretty stringent. So where is the line? If it's purely speculative, if it's just a reasonable basis, or if there's enough elements, this would be yet another element? I just don't know where you're asking us to draw the line. Well, I read Castro, Your Honor, from the circuit as saying that if the admission established one of the required elements for a successful prosecution, that would be sufficient. And here I think we would have that potentially in her testifying. And I do think, again, she would be, per Judge Thompson's question, subject to cross-examination about how she came into possession of that firearm. The government would be allowed to inquire in ways that would at least give context to her claims of ownership. And I'll tie back to even more the court. The defendant actually received an enhancement in his sentencing for obstruction of justice for pressuring Ms. Finnegan to testify at trial. There were jail recordings. These were referred to Joint Appendix 738 in the PSR in paragraph 23, that the defendant was pressuring her to testify against her will and that she did not want to testify that the firearm was hers because it wasn't. And so we have a situation where her testifying, to bring it back to the perjury example, very well may have exposed her to exposure for perjury as well had she done so. So I think with all that context, Your Honor, while it was not a lengthy inquiry from the district court, it was an inquiry that Mr. Donovan's trial counsel deemed satisfactory at the time. I'm sorry. Was the court made aware of that conversation between the defendant and Ms. Finnegan that took place at the jail where she indicated she did not want to admit ownership? Was the court made aware of that? Your Honor, as I'm recalling here today, I know it's certainly part of the record and it came out, I know for certain before sentencing in the record sites that I noted, but I don't recall if that had been provided to the court in the context of the briefing on Ms. Finnegan's intent to invoke. So I'm sorry, Your Honor. I don't know the answer to that here today. And if I just wanted to comment briefly on, if I may, with the court's permission, as I see I'm running out of time, the two silencers here. Let's say there was something to the idea that there was no basis for her invoking it. Is there any basis for thinking her testimony would have been, that was in the record at the time of the trial, that her testimony would have been helpful to him? Or is that just equally speculative? It's hard to answer, Your Honor, because the defendant did later choose to testify, and so I think he introduced through his own testimony a lot of what he would have theoretically elicited. But at the time of the ruling by the judge, which is being challenged. One question is, I mean, I take the point that the defendant's making, which is fairly speculative that she had any reason to fear prosecution, so the judge should have allowed her to testify. On the other hand, that failure can't matter much if there's no reason to think her testimony would have been favorable to him. Is there anything in the record to show that it would have been? I mean, I think obviously calling in another individual to say, no, that's my gun, I think could theoretically be beneficial to them. But that's what I'm saying. Is there any reason to think she would have said that? Based on the jail call, I don't think so, Your Honor. But in the record there, was it fairly speculative what she was going to say? There had been an earlier phone call to the ATF agent around the time of the search warrant that was executed on the defendant's property, in which I think Ms. Finnegan claimed that the firearm was hers. I see. So there was a basis for thinking her testimony might have been helpful to him, and that's the ground for him thinking he was? That's right, Your Honor. Okay. Thank you. But does it matter? Because he's charged with the possession of the firearm as a felon. So, I mean, conceivably, they both could have possessed it. So to that extent, would her testimony have been exculpatory given the other evidence about the location of the firearm and his proximity to the vehicle on the day that the search warrant was executed? I think it is at least on his face exculpatory, Your Honor, but I don't think it would have moved the needle at all for the jury for the reasons you've alluded to, because the firearm was in his Jeep strapped to the roll bar. Mr. Donovan, in his later testimony, even acknowledged he knew the firearm was in the Jeep. The firearm, this was a unique gun in that it had a second barrel that was in the workshop with other ammunition for which the defendant was convicted. This workshop was very clearly the defendant's space and the firearm itself had aftermarking drilling done on it, and there's a drill press in the workshop. So when you add all that up, I think the jury rightly would have dismissed Ms. Finnegan's testimony as outweighed by all the other circumstantial evidence that the firearm, even if originally had been owned by hers, was at least jointly possessed by Mr. Donovan. Any further questions? Thank you. Thank you, Your Honor. Thank you, counsel. At this time, if counsel for the appellant would please reintroduce himself back on the record. He has a two-minute rebuttal. Thank you again, Michael Eaton, for the appellant. I just want to note on that final point, yes, this was a circumstantial case. There was evidence, as the government just noted, that she had claimed ownership of the firearm. I would also note that the lack of a particularized inquiry results in the failure to narrow the assertion of the privilege. And one of the secondary inquiries the defense sought of the witness was her knowledge, her observations of Mr. Donovan's, the defendant's, use of the firearm. And in a circumstantial case, this would have been highly probative evidence. Is there anything to indicate that she would have said something favorable on that score? There's not anything in the record to indicate, but I think that's precisely why there should have been some sort of inquiry here. Now, just to briefly address the oil filters issue, I would just note very briefly that the firearm enhancement requires there to be three firearms at a minimum to justify the enhancement. There were only three items identified as firearms here, the shotgun and the two oil filters. So even if one of these oil filters is not a, quote unquote, firearm silencer, the enhancement is not justified. And here it simply does not qualify under the definition as a firearm silencer. It neither has the components to operate as a firearm silencer, so much so that the ATF didn't even test it because they knew it wouldn't function properly. And there's no evidence of intent on the part of the defendant for it to function as a silencer. So under Crooker, it should not qualify as a silencer if the court reaches the sentencing issue. But, of course, we would ask the court to vacate the conviction in this matter. Thank you. Thank you, Your Honor. Thank you, Counsel. That concludes argument in this case.